In our last case of the day, Navarrete-Melgar v. Bondi. Mr. Hammond, good to have you with us, sir. Good morning, Your Honor. May it please the Court, this case presents two narrow issues, Your Honor. First, whether the Board misapplied its own decision in matter of Fernandez when it treated petitioner's defective NTA objection as waived. And second, Your Honor, whether the agency's adverse credibility and persecution analysis requires remand under this Court's precedence. I'll begin with the NTA issue because the timeline of the governing law is critical. Congress defined NTA in 8 U.S.C. 1229 A.1. The statute required the charging document include, amongst other things, time and place of the removal hearing. In this case, the NTA served in April 2016 did not contain that information. Instead, the date and time are provided through later separate hearing notices. At the time of petitioner's immigration proceedings, controlling precedent was the Board's decision in matter of Bermudez-Cota. Bermudez-Cota interpreted Pereira narrowly and held that a defective NTA could still be sufficient when followed by a later hearing notice. So when the individual hearing occurred in November 2019, the governing BIA precedent treated two-step notice process as acceptable. That legal framework changed when Supreme Court decided Ms. Chavez-Garland in 2021 and held that a valid notice to appear must be a single document containing all the information specified in the statute, including hearing date, time and place. And why is it that you say that your argument on this was not waived? Your Honor, in 2016 when the pleading happened, the general knowledge of the significance of... So because the case law, the Fourth Circuit case, specifically Cortez and others, that forecloses the argument you're making now didn't occur until after 2016? That is correct, Your Honor. And not just that. The significance... When did you raise the issue? At the BIA level in 2021, just after Ms. Chavez. Just after Ms. Chavez. So the IJ didn't deal with this at all? Your Honor, because the two-step process... That sort of upends the normal way appeals are handled. Appeals normally deal with issues that the trial judge, here at the IJ, dealt with. And here, this issue was not raised with the IJ. It was raised with the Board of Appeals, the Board of Immigration Appeals. The BIA, we call it. Correct, Your Honor. You've got to get around the waiver issue. You recognize that, don't you? That's an uphill battle. The timing, Your Honor, yes. The legal community, Your Honor, at the time, 2016 up until 2021, did not recognize the relevance and the significance of just not having the time and date. Even today, if I object to the time and date, the IJ will decide, as the case dismissed or terminated, for failure to prosecute. The charging document was not complete, was not available, according to Ms. Chavez. The charging document was unavailable. The entire proceedings happened without the charges, without the charging document. And the relevance of just not having date and time was provided in Ms. Chavez for the first time. And after that, at the first meaningful opportunity to raise that objection, the petitioner raised it in 2021. It's like saying I did not have the right to even waive before 2021. Even matter of Fernandez, Your Honor, came in 2022, after we raised it at the BIA level for the first time, after the briefing was done. So, before all this, the governing BIA president treated two-step as acceptable. And after that, now, the judges do not allow it to move beyond that first hearing if you object. Because now, understanding and the significance is already there in the community as a whole. But isn't the law that this is not jurisdictional anyway? It's a claim processing point. Correct, Your Honor. And that is why we are not disputing jurisdiction. We are disputing that timing was correct. Because if we see it from this perspective that when this case has, this particular issue has evolved through years, like what is an NTA, a charging document? And what can you object? Earlier, when we used to object to this particular matter, the judges used to ask us to brief on the matter. Okay, send me a brief. Now, they do not. Now, they dismiss a failure to prosecute. It has evolved, this particular subject matter has evolved through the years. Now, we are talking in 2016. Nobody knew about it. The waiver must be BIA said, stated, you did not raise it at the IG level, it's waived. The waiver must be knowing and voluntary. It was not known, not just to petitioner, but to entire community as a whole. We didn't know the relevance of not having a date and time at the NTA. It's like the analogy we can take, no body, no crime. No body, unless you find the body, you cannot be charged with murder. Something like that. That, the analogy part, Your Honor. So that framework changed after Nish Chavez. And Nish Chavez says, one single document, not two, one, has to have all of it. And then the timing after Nish Chavez was decided, petitioner filed BIA merits brief in August 2021, raised a defective NTA argument. Importantly, that brief was filed, Nish Chavez has already been decided. But the board had not yet issued matter of Fernandez, which later articulated the agency's procedural rule regarding the timing of NTA, Your Honor. Importantly, the statute itself does not specify such objection must be raised and when. You're saying the waiver could not be valid because it was not a knowing waiver because the legal community was not aware of the significance at the time. Is that what you're saying? Up until 2021. And then where does that leave us since, as Judge King pointed out, that's a claims processing rule versus jurisdiction. Your Honor, if you ask me, I will say, according to Nish Chavez, it's a jurisdictional issue. There is no charging. Nish Chavez says. But that's not the law. You can say that you'd like for it to be that way. That's not the law. It's a claim processing point. Claim processing rule, I think, is what matter of Fernandez says. A matter of Fernandez talks about agency's procedural way of handling this. Statute does say. And we got a recent case, Fernandez, not Fernandez, Fernandez from 2025 says same thing. Correct, Your Honor. That is why our entire case is based on the timing of how the law has evolved during the years and when our issue was raised in the system. So that's why it is. OK, you raised it. I think Dr. Stacker mentioned, we'll give you credit for raising it. But it still loses because it's a claim processing point. It's not jurisdictional. So we don't throw the case out for lack of jurisdiction. If it's lack of jurisdiction, maybe we'd have to throw it out. But it's not a jurisdictional point. You're arguing something about claim processing. I mean, you could argue that you're prejudiced by some delay. Maybe this calls the delay. But how long was it? They notice it to appear didn't have the date and time on it. 2016. And when was the date and time provided? A few days later? Somewhere in the, so what happened after the pleading happened? Before the pleading, they must have provided the court hearing date. But, Your Honor, You don't know when it got to date. Exactly when. You don't know when you got the date and time. Before the pleading, Your Honor, they must have sent us I bet that lawyer for the government will tell us. But, Your Honor, in the matter of Fernandez also, they say generally must be raised, generally. That means there must be an exception. It's a general default rule, yes, but not always you have to. Generally, yes, you have to raise that there, but not always. So, in this case, board treated petitioner's objection as categorically waived under Fernandez. But the petitioner raised the issue during the administrative appeal, after the Supreme Court clarification and all that stuff. The board never meaningfully analyzed whether the timing fits within the Fernandez framework. Happened after 2022, later even. Fernandez came later. Second, Your Honor, even apart from the NTA issue, the remand is warranted on the merits. IJ denied relief based on adverse credibility and in the alternative found the petitioner had not shown harm, rising to the level of persecution. Stated, has to be a physical harm. And this court has already decided that it's the physical injury is not necessary, considering the severity of the threats and extortion, what the petitioner faced in this case, Your Honor. Legal error matters because petitioner's case is built on repetitive threats tied to her political activism. Threats to her daughter and extortion accompanied by threat to cut out her throat or tongue. Your Honor, credibility issue was also there. As the judge said, they were not credible. The agency failed to engage fairly with petitioner's explanation that the later caller referenced prior arena threats, which is why she understood the threat as connected. That was overlap, not mutually exclusive. The overlap explanation was in the record, but the agency treated it as speculation rather than grappling with it. Petitioner's case is not random extortion only. It is a political activity with threats. Then a later extortion threat that referenced the earlier political threats. The agency treated those as mutually exclusive rather than potentially connected. The agency focused on whether there was one call, two calls. But the court event remained the same throughout the record. Petitioner received threatening calls demanding money, threatening to cut her tongue, differences related to how the earlier political threat and later extortion call were described, not whether the threatening conduct occurred. The credibility issue also talked about sources of threat. Petitioner said arena supporter threatened her politically. Later the phone call came from someone identifying as MS-13. The IJ treated this as inconsistency, but the petitioner's explanation was that the caller referenced the earlier political threats, which is why she understood the event as connected. The agency treated that explanation as speculation instead of evaluating it within the broader context of political violence and gang activity. Also talked about number of threats, how many times they came. The differences between the initial credible fear interview and the later testimony are not unusual. When someone travels days, weeks, months, and suffer what they have suffered during the journey to reach the U.S., they are in a trauma. They always say things, and then once they are here, they calm down, they talk to the lawyers, and their mind starts working. They recall things that they missed at the credible fear interview at the border. Family affidavits, differences there as well, Your Honor, because the differences reflect... So you're explaining how people get the facts mixed up? Yes, Your Honor. At the border... They tell different stories. They don't tell different stories. They miss some things. In their first interview, they tell one story. Later on, they... They do not say different stories. They just may miss MS-13 called, arena guys called, how many times. They may say, oh, one time only. Their memory is refreshed. The memories is there, but the thing is trauma is also there. Trauma, because the journey to the U.S. is not a very nice journey. They go through a lot of things, maybe raped, threatened, abducted, a lot of things, Your Honor. So, unless the court has questions, thank you. You saved some time for rebuttal. He has some rebuttal time. Thank you. Thank you very much. Ms. Lee, you're on the video over here for us. Good morning, Your Honors. Attorney General. Yeah. Good morning, Your Honors. May it please the court. My name is Sana Lee, and I'm representing the Attorney General in this case. Your Honors, the first issue in the case concerns the objection to the NTA and the fact that the petitioner did not timely raise that objection. And as you have already discussed, the court has already ruled that this is not a jurisdictional issue. And the board has held that this is a claims processing issue. And so, in Matter and Fernandez, the petitioner was required to raise the objection to the NTA prior to the closing of proceedings before the immigration judge. And in this case, the objection was raised in the appeal. So it was not raised before the immigration judge at all. And the petitioner had an attorney at that stage before the immigration judge. And there was no mention of anything about the NTA, nothing whatsoever. And the petitioner just went ahead and pleaded to the NTA at that stage. And then the immigration judge went on to the substantive matters regarding the asylum application. And to answer a question... How can one of these claims ever be valid? Do you think they can't? No, Your Honor. As the board held in Fernandez, the petitioner could have raised it before the immigration judge. I understand. And they're supposed to raise it before the immigration judge, and they didn't. They did raise it before the BIA. And you say, well, but it's a claims processing rule. It's not a jurisdictional rule. So can a claimant ever get, or an applicant ever get relief based on the insufficient notice to appear? The answer, I think, of the attorney general is no. Not in this case, not with the timing of the objection. No, Your Honor. Never in any case that could not get any relief. I mean, it's an error. But you can never get relief from a failure to give a sufficient notice to appear. Is that the government's position? Well, you could get relief if you raise it at the right time. You could raise that. And what would your relief be? You get a new notice to appear. Yes, Your Honor. You would not be able to terminate your proceedings. Right. You just get the blanks filled in. Right, Your Honor. I mean, the notice to appear is insufficient for place and date. Correct? So once you get the place and date, it's sufficient. That's what I think it seems to be. The attorney general's position is a claimant could never get any relief on this kind of a claim. Well, Your Honor, we've gone over the fact that this is not jurisdictional. It's not jurisdictional. It's a claim processing rule.  Once it's raised, you tell them you have to be there, or you were supposed to be there at this date and this time, and they're supposed to comply with it, and you go forward with the proceeding. That's correct, Your Honor. You try to raise it in the court of appeals, and you tell us, well, it's not a jurisdictional thing. It's a claim processing rule, and it was basically a harmless error. We deal with that a lot, not in criminal cases. We know something about that. So it's like a harmless error. But in this situation, it seems to be the attorney general's position is that this kind of a claim is always harmless error. Well, Your Honor, I can't speak for every circumstance or situation that may not have been addressed by the board, but I would say under the facts of this case, yes, he raised it too late, so he cannot get relief. I'm sorry, she, the petitioner, could not. Well, you couldn't get relief anyway. All you get is a place and date. You get a hearing date. You get notice of when you're supposed to show up for the hearing. Yes, Your Honor, and this petitioner did show up for all of her hearings. So it's not much of an issue, except that the government needs to fix it and do a better job and not pass out these notices to appear with blanks on or banks that are unfilled. Right, Your Honor. They need to put in the place and date that they're to show up. Yes, and I believe that the DHS has begun to ensure that that information is included in all NTAs. But at the time of this case, this petitioner's particular case, it did not have the date and time, but it was probably a few days later, it was May 12th, 2016, that the immigration court provided a notice of hearing to the petitioner, which provided the date and the time of her next hearing. How much of a delay was it? I said that you would know. What was the delay between giving them the notice to appear that was insufficient and completing it? A few days, you said? It was, yes, two days. Can you count? Tell us how much of a delay was it? Two days, Your Honor. Two days. Yes. Two days. Yes. And a two-day delay, and that's what we've been talking about here this morning, a two-day delay for the date and time. Okay. Yes. And then they got another issue about the merits of this thing. Yes, Your Honor. So moving on to the adverse credibility determination, the merits involves the agency's determination that she did not warrant asylum or withholding of removal because her testimony was inconsistent with so many other things, including the credible fear interview and her asylum application, and then later her affidavit that she prepared a few years after she submitted her asylum application. So in this case, the petitioner's story did change, and it morphed from fearing gangs and extortion, and I believe she thought it was because she was part of a female household that the gangs were targeting her for extortion. So that's what she told the asylum officer in the credible fear interview. And then it started to change. In her asylum application, she still was relying on this fear of gangs story, fear of extortion. And in the asylum application, she continued that theory. But then a few years later, she filed her affidavit, which was the first time she mentioned that she feared the arena party and that she feared the arena party based on her own political opinion. So that was the very first time she mentioned that. And then in her testimony, she expanded that theory, which was that she feared the gangs and the arena party, and that it was the arena party that threatened to cut off her tongue. So that was a clear inconsistency with her original claim before the asylum officer, which was that the gang member threatened to cut off her tongue. And so these are clearly different stories, and the agency pointed out all the inconsistencies, which are located in the record, and... How many inconsistent stories did she give? I'm sorry? How many inconsistent stories? Well, Your Honor, there are so many inconsistencies. I'm not sure exactly how many there were, but there were inconsistencies about who threatened her. So that was really an important, significant inconsistency, and why they threatened her. So that's very significant as well. So at the beginning, she didn't claim to fear any harm based on her political opinion. And she said she never got any threats based on her political opinion. But then in immigration court, she testified, well, I fear persecution, and I was threatened based on my political opinion. So those are very clear inconsistencies. And then there were also the number of threats that she says she received. So it began with one threat at the very beginning, and then she changed, and by the time she testified before the immigration judge, it was four different threats, as well as two of them coming from the ARENA party, and that's what she testified to based on her work for the FMLN party. And so there were the number of threats. There was also the timing of the threats. At the beginning, before the asylum officer, she claimed that she received a threat a week before she left the country. And then later on, she testified it was a few months before she left her country. And so there were numerous inconsistencies regarding who, why, and how many times, and what they said to her. And regarding her explanation. Did she only testify once before the IJ? Yes, Your Honor. So only in one of the statements was she under oath? Well, I believe before the asylum officer. She made multiple statements that were inconsistent, but only one of the statements she ever made was under oath, and that was before the IJ. Correct? Well, I believe that when you answer questions to an asylum officer, you do – there may be an oath there, although I would have to – The asylum officer swears them in before they ask them questions? Well, Your Honor, I can't say that for sure, but – I don't think I've heard that before.  But we know she was under oath before the IJ. Yes, we know that. Counsel, didn't you say she submitted an affidavit? Yes, Your Honor. That was under oath, wasn't it? That's what an affidavit is, isn't it? Well, yes, Your Honor. I believe that she had it notified. I was asking, isn't an affidavit under oath? Yes, Your Honor. I'm sorry, she had it notarized, yes. So that was under oath as well. So at least two of her statements were under oath, the IJ testimony and the affidavit? Yes, Your Honor. Okay. Now, those inconsistencies, when she's under oath, would you agree with me, would be more material than statements that were made offhand in interviews, perhaps? Not under oath. Well, Your Honor, I believe that all of the statements are important, and the most important factor is that the agency may rely on those earlier statements. I'm not saying, talking about whether they relied on them or not, but you don't know whether they were under oath or not. People who are under oath, they're sworn to tell the truth. And then when they're not under oath, they aren't sworn to tell the truth. If the oath means anything, they're more likely to tell the truth when they're under oath. That's the premise of the whole thing. That's the way that our system operates that way. Now, they should be telling the truth all the time, but I just was trying to figure out how many of you said she made a lot of statements and there were a lot of inconsistencies, how many of them were under oath and how many weren't, but you don't really know, except there were two now we know were under oath. Yes, Your Honor. So despite the fact that she explains, she explained after the fact that she did not remember to add certain information to her asylum application. She said she just didn't remember to add information about the Arena Party and her fear of that party. That's a legitimate answer to not remember as a general proposition. People forget things. Yes, Your Honor. People do forget things, but that doesn't mean that the agency was required to give credit to that explanation. The agency can reject an explanation under this court's law, and the substantial evidence in this case is there to support this adverse credibility determination. And as far as opposing counsel's explanation today that she was suffering from trauma and the journey to the U.S., she didn't raise those explanations to the agency. So that's like an after-the-fact explanation, which she attempted to do before the board as well, saying, well, they're all the same thing in my mind, that the MS-13 gang and then the Arena Party members, they're all kind of morphed together in my mind. But that's not what she said before the immigration judge when she was testifying. When she testified, she said, well, I just didn't remember to bring these things up in my asylum application. And so, Your Honors, the adverse credibility determination was clearly supported by substantial evidence, and it was dispositive of her asylum and withholding applications. And if Your Honors have nothing further, the government will rest. Thank you very much, Ms. Lee. We appreciate it. Thank you. Mr. Adams, you have some time. Thank you, Your Honor. There's some inconsistency here as well, Your Honor, with respect to opposing counsel's statement regarding what will happen if there is no date and time today. What will happen is nobody will go forward. The judge will terminate the proceedings, and unless you send us one document that has date and time, all the allegations . . . Right. That's what Judge King said, that they'll get a new date and time, right? If they do not rectify, it will be terminated. So it will be terminated. That is what will happen, even today. And also, Fernandez talks about an objection of noncompliance of NTA. What do you mean it will be terminated? There won't be any more immigration proceedings? That's it? We have a lot of cases terminated, failure to prosecute. Then for four years, we don't hear anything. And all of a sudden, we get a new NTA. Okay, you get a new NTA. That's the part you're leaving out, and that's what Judge King said would happen. I'm not sure that's your best argument. Your Honor, Fernandez says the objection to a noncompliance NTA will generally be considered timely if it raised prior to immigration judge proceedings. A respondent who has made a timely objection to a noncompliant notice to appear is not generally required to show he or she was prejudiced by missing time and date. Not required to show that prejudice. It's Fernandez, Your Honor, who says that here. On top of that, inconsistencies, details were overlapping. MS-13 called. ARENA members called. Multiple events were there. Were not inconsistent. Were connected together to say that she was threatened to cut her throat, her daughter, to kill her daughter. So the threat was there, severe threat. It was not inconsistent. Multiple different events happened. And affidavit and the asylum hearing did not even talk about anything about other things. They said the same things. Two threatening calls, extortion threats, and political threats. So asylum application with the affidavit on it says reference to the same extortion threat. The asylum application did not check the box for political opinion, though. But, Your Honor, am I allowed to? You can answer the question. Yes. So asylum application did not show, but the testimony, the record is complete after the application, affidavit, and testimony. Well, the asylum application says at the last page, signed and sworn to before me by the above-named applicant. So that was a sworn, that's another sworn statement. And it didn't list political opinion. Included with the affidavit and testimony is a complete record, Your Honor. Application, affidavit, in the application, and testimony. You got it. Thank you, Your Honor. Very good. Thank you very much. Ms. Laveley, thank you. We'll take this case under advisement. And we're going to come down and greet the counsel that's here. And then we're going to return to the bench and we're going to have a conversation with the high school students that are here.
judges: Robert B. King, Roger L. Gregory, Stephanie D. Thacker